Fredy Orlando VENTURA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 99–71004

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2001.

Filed Sept. 10, 2001.

Scott Wiener, Heller Ehrman White & McAuliffe, San Francisco, California, for the appellant.

Joshua E. Braunstein, United States Department of Justice, Washington, D.C., for the respondent.

Before: SCHROEDER, Chief Judge, LAY,[*] and DAVID R. THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The petitioner Fredy Orlando Ventura petitions for review of a Board of Immigration Appeals (BIA) decision dismissing his appeal of the denial of his asylum application. He contends the record compels a finding that he established past persecution on account of imputed political opinion, and the INS's evidence of changed country conditions failed to rebut the presumption of future persecution. He seeks asylum and withholding of deportation. We grant Ventura's petition for review, and hold that he is entitled to withholding of deportation. We also conclude Ventura is eligible for asylum, and remand his asylum application to the BIA for the Attorney General's exercise of his discretion in granting or denying that application.

## I.

Ventura is a 30–year–old native and citizen of Guatemala. He first entered the United States without inspection in July 1993. He left Guatemala after guerrillas spray-painted three "notes" on the wall of his house in 1992 and 1993, demanding that he join their forces and threatening

[*] Honorable Donald Lay, Circuit Judge, Eighth Circuit Court of Appeals, sitting by designa-tion.

harm to his family if he did not. In his testimony before the Immigration Judge (IJ), Ventura stated that all three notes were the same and that they read, "Fredy Ventura, you must join us, or your family will suffer the consequences." He further testified "if I didn't turn myself in to them, that they would kill me, that they would threaten me."

Ventura testified and stated in his asylum application that because members of his family are in the military, the guerrillas perceive him to be their enemy, and for that reason they have threatened him. Ventura's cousin Oswaldo Ventura is a lieutenant in the army and has served in the military for twelve years. Ventura states that he and Oswaldo grew up together and Oswaldo "is like a brother to me." Oswaldo used to visit Ventura during his monthly leave and would sleep at Ventura's house.

Ventura's uncle Arnoldo Ventura is a Military Commissioner, responsible for recruiting Guatemalan men to join the army. Approximately five years before Ventura fled Guatemala, Arnoldo was nearly killed by guerrillas, who attacked him with machetes. In addition, another of Ventura's cousins, Lorenzo Ventura, a member of the army, was killed by guerrillas in 1988, while walking in a village and not in uniform. Ventura's friend, Martin Contreras, was murdered by guerrillas after receiving threats similar to those Ventura received, demanding that he join the guerrillas.

Ventura testified that he is not familiar with the guerrillas' ideology, but he stated in his asylum application that he sympathizes with the military and not with the guerrillas. Ventura stated that the guerrillas can find him anywhere in Guatemala, and that if he returned to Guatemala he would be killed, even though a peace accord has been signed.

The IJ found Ventura's testimony to be credible, but determined that Ventura "failed to present adequate objective evidence to show that his fear is based on one of the protected statutory grounds." The IJ found Ventura's case was indistinguishable from *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The IJ also concluded, without elaboration, that, "[i]n view of changing country conditions," Ventura failed to demonstrate a well-founded fear of future persecution.

The BIA conducted a de novo review of the record. In its six-paragraph per curiam order, it briefly discussed and rejected Ventura's "on account of" argument and stated that it agreed with the IJ's decision that Ventura had failed to make the required showing that he was persecuted on account of a statutorily protected ground. The BIA declined to address the issue of changed country conditions, and dismissed Ventura's appeal.[1] This petition for review followed.

## II.

When the BIA conducts its own review of the record, our review is limited to its decision. *Singh v. INS,* 94 F.3d 1353, 1358 (9th Cir.1996). A factual determination by the BIA must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812. That determination "can be reversed only if the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Id.* (citing *NLRB v.*

---

1. Apparently, because Ventura's brief was untimely filed, the BIA did not consider it in reaching its decision. *In re Fredy Orlando Ventura,* A72 688 860 (Board of Immigration Appeals Feb. 24, 1999) (interim order).

*Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939)). The petitioner "must establish that the evidence not only supports the conclusion that [he] suffered persecution or has a well-founded fear of persecution, but compels it." *Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc) (citing *Ghaly v. INS,* 58 F.3d 1425, 1431 (9th Cir.1995)).

 We will accept as true an applicant's testimony when neither the IJ nor the BIA question the applicant's credibility. *See Kamla Prasad v. INS,* 47 F.3d 336, 339 (9th Cir.1995). We recognize that corroborating evidence of a persecutor's motive may be difficult or impossible to come by. "[W]e have repeatedly emphasized that 'asylum applicants are not required to produce documentary evidence' to support their claims of persecution. We have also emphasized that '[b]ecause asylum cases are inherently difficult to prove, an applicant may establish his case through his [or her] own testimony alone.'" *Shoafera v. INS,* 228 F.3d 1070, 1075 (9th Cir.2000) (citations omitted).

 A determination of past persecution such that a petitioner's life or freedom was threatened creates a presumption of entitlement to withholding of deportation. *Duarte de Guinac v. INS,* 179 F.3d 1156, 1164 (9th Cir.1999). The INS may rebut that presumption by showing by a preponderance of the evidence that persecution is no longer more likely than not due to changed country conditions. *Id.*

### III.

 Neither the BIA, the IJ, nor the parties addressed the question of whether the threats to Ventura rose to the level of past persecution. However, it is clear from the record that they did.

 Death threats and forced recruitment efforts by a revolutionary group constitute persecution. *See Garrovillas v. INS,* 156 F.3d 1010, 1016 (9th Cir.1998); *Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir.1997); *see also Arteaga v. INS,* 836 F.2d 1227, 1232 (9th Cir.1988) ("Forced recruitment by a revolutionary army is tantamount to kidnapping, and is therefore persecution.").

Past persecution was established on facts similar to those in the present case in *Del Carmen Molina v. INS,* 170 F.3d 1247 (9th Cir.1999). There, the petitioner received two notes from El Salvadoran guerrillas threatening her family if she did not go with them and talk to them about her cousins. She opposed the guerrillas, her family was involved in the military, and some relatives had been killed because of the family's military ties.

 Consistent with *Del Carmen Molina,* we conclude that the threats and forced recruitment directed toward Ventura rise to the level of past persecution. We turn next to the primary issue in this case, whether Ventura established that he was persecuted on account of an imputed political opinion. To establish this, he had to "show that his persecutors actually imputed a political opinion to him." *Sangha,* 103 F.3d at 1489.

 Past political persecution of family members provides evidence of imputed political opinion of an asylum applicant. *Id.; see also Ramirez Rivas v. INS,* 899 F.2d 864, 868–71 (9th Cir.1990). In such cases, "the trier of fact must examine how close a relationship exists between the persecution of family members and the situation of the applicant." *Sangha,* 103 F.3d at 1489 (citing *Arriaga–Barrientos v. U.S. INS,* 937 F.2d 411, 414 (9th Cir. 1991)). Forced recruitment without evidence of a discriminatory purpose is insufficient to compel a finding of persecution

on account of political opinion. *Pedro–Mateo v. INS*, 224 F.3d 1147, 1151 (9th Cir.2000) (citing *Elias–Zacarias*, 502 U.S. at 482–83, 112 S.Ct. 812).

Ventura's evidence that his persecution occurred on account of imputed political opinion consists of his credible, uncontradicted testimony that the guerrillas targeted him because they believed he held anti-guerrilla sympathies; that his uncle was attacked and his cousin was killed by guerrillas because of their military affiliations; and that he is closely associated with his cousin Oswaldo, an army lieutenant.

In *Del Carmen Molina*, we held the petitioner established a well-founded fear of persecution on account of political opinion. Although notes directed to her by the guerillas gave no explicit indication that the guerillas were motivated by her political opinion, the notes stated that the guerillas wanted to talk to her about her cousins, and to take her with them. 170 F.3d at 1249. The petitioner's credible and uncontradicted testimony was that the guerillas threatened her because of her political opinion. *Id.* at 1250. Relying on this evidence, we concluded that the BIA's determination that the petitioner was not persecuted on account of actual or imputed political opinion was "not supported by reasonable, substantial, and probative evidence." *Id.*

The INS attempts to distinguish *Del Carmen Molina*, arguing that there the petitioner had an identifiable political opinion and her testimony constituted sufficiently compelling evidence to require reversal. Those circumstances, however, are also present in this case. Like the petitioner in *Del Carmen Molina*, Ventura presented credible, uncontradicted testimony that the guerrillas threatened him on account of his imputed anti-guerrilla beliefs. In addition, like the *Del Carmen*

*Molina* petitioner, Ventura testified that he and his family are closely associated with the military, that family members have been targeted because of that affiliation, and that he himself can be readily associated with pro-military, anti-guerrillas views. In addition, the record establishes that Ventura, like Del Carmen Molina, had an identifiable political opinion—anti-guerrilla sympathy for the military.

We conclude the evidence presented by Ventura compels a finding that he was persecuted on account of imputed political opinion. This conclusion is supported not only by *Del Carmen Molina*, but also by our decision in *Shoafera*, 228 F.3d at 1074–75. There, an Ethiopian woman claimed she was raped on account of her Amharic ethnicity. Evidence of her persecutor's motives consisted solely of her and her sister's credible, uncontradicted testimony that she was raped because she was Amharic. *Id.* We held:

> "[N]either the IJ nor the INS elicited any testimony from Shoafera demonstrating that the nature or basis for her testimony was questionable. A bald assertion that Shoafera's credible testimony was 'speculation' is insufficient. Some evidence or support for that conclusion must be offered.... Shoafera's uncontroverted and credible testimony is sufficient to establish that she was persecuted on account of ethnicity."

*Id.* at 1075.

The INS argues the present case is more similar to *Elias–Zacarias* than to either *Del Carmen Molina* or *Shoafera*, and in any event, *Elias–Zacarias*, a Supreme Court decision, is controlling. In *Elias–Zacarias*, Guatemalan guerrillas attempted to recruit the petitioner, but he refused "because the guerrillas [were] against the government and he was afraid that the government would retaliate

against him and his family if he did join the guerrillas." *Elias–Zacarias,* 502 U.S. at 480, 112 S.Ct. 812. The Court held that a threat of forced recruitment does not alone constitute persecution on the basis of political opinion. *Id.* at 482–83, 112 S.Ct. 812. The record contained no evidence that the petitioner had an actual or imputed political motive to resist recruitment. *Id.* at 482, 112 S.Ct. 812. The petitioner did not testify that he believed the guerrillas imputed any political opinion to him, that any family members had been persecuted in the past by guerrillas, or that he had any anti-guerrillas ties. Ventura's circumstances are far different from those of the petitioner in *Elias–Zacarias.*

Ventura's circumstances are also distinguishable from those of the petitioner in *Ochave v. INS,* 254 F.3d 859 (9th Cir. 2001). There, the petitioner declared in her asylum application that she was raped by guerrillas on account of her imputed political opinion because her father was a government official. *See id.* at 862. The IJ found the petitioner's statements credible. *Id.* at 869–70 (Pregerson, J., dissenting). In denying review of her petition, we emphasized that the IJ was not compelled to accept the accuracy of her belief regarding her persecutors' motives because there was "substantial evidence tending in the other direction." *Id.* at 866. There had been many similar attacks on other victims, suggesting that the rape of the petitioner may have been a random act of violence; the attack occurred outdoors, rather than at the petitioner's home or workplace (which would have suggested the rapists were seeking the petitioner specifically); and there was no evidence that the rapists knew who the petitioner was. *Id.* at 865–66. In contrast, Ventura presented overwhelming evidence that his persecutors knew exactly who he was: the guerrillas came to his home and painted notes on the wall of his house three separate times, addressing the notes to him personally. No evidence in the record contradicts Ventura's credible testimony that the persecutors targeted him because they believed he held anti-guerrilla beliefs.

Ventura's circumstances are also different from the petitioner's in *Molina–Morales v. INS,* 237 F.3d 1048 (9th Cir.2001). In *Molina–Morales,* the petitioner's aunt was raped by a local leader of the ARENA party in El Salvador, but there was no evidence the attack was politically motivated. *See id.* at 1050. Nor was there any evidence that the petitioner had any ties to an opposing political party, or that the persecutors had any reason to believe the petitioner opposed their views. We held that the petitioner had not established persecution on account of actual or imputed political opinion. *Id.* at 1051–52.

In *Arriaga–Barrientos v. INS,* 937 F.2d 411 (9th Cir.1991), the petitioner testified that his release from the Guatemalan military "might be construed [by pro-government forces] as an act sympathetic to the opposition," and that "his long-standing military service might be construed as an expression of political support for the government." *Id.* at 412. Two of his brothers, who lived eight hundred kilometers away, had previously been abducted by unknown gunmen for unknown reasons. *Id.* Unlike the present case, however, those facts failed to demonstrate any reason for the persecutors to impute a political opinion to the petitioner. We held the petitioner had failed to establish a well-founded fear of future persecution on account of political opinion. *Id.* at 413–15.

In contrast to *Ochave, Molina–Morales,* and *Arriaga–Barrientos,* Ventura's level of past persecution and his credible, uncontradicted testimony regarding his persecutors' motives compel the conclusion that he

was persecuted on account of imputed political opinion.

Because Ventura established past persecution on account of imputed political opinion, he is presumed to have a well-founded fear of future persecution on account of that protected ground. 65 Fed.Reg. 76,-121, 76,133 (Dec. 6, 2000) (to be codified at 8 C.F.R. § 208.13(b)(1)). The INS presented evidence of changed country conditions to rebut this presumption, but the BIA did not address that issue. It failed to consider the issue because it determined Ventura had not met his burden of establishing that he was persecuted on account of an imputed political opinion.

 When the BIA does not reach the issue of whether changed country conditions rebutted the presumption of a well-founded fear of future persecution, we generally will remand to the BIA for it to consider the issue. We do not remand, however, when it is clear that we would be compelled to reverse the BIA's decision if the BIA decided the matter against the applicant. *Navas v. INS,* 217 F.3d 646, 662 (9th Cir.2000); *see also Gafoor v. INS,* 231 F.3d 645, 656 n. 6 (9th Cir.2000). We conclude that remand in this case is inappropriate because the INS's evidence of changed country conditions clearly demonstrates that the presumption of a well-founded fear of future persecution was not rebutted.

In December 1996, after Ventura left Guatemala, a peace agreement was signed between the government of Guatemala and the Guatemalan National Revolutionary Party (URNG) (the umbrella guerrilla organization alliance). Bureau of Democracy, Human Rights and Labor, United States Department of State, Guatemala— Profile of Asylum Claims & Country Conditions 2 (June 1997). In March 1997, the URNG "dissolved itself to devote its efforts to legal political activity." *Id.* As

a result, "there was marked improvement in the human rights situation." *Id.* at 3. However, "[e]ven after the March cease-fire, guerrillas continue to employ death threats...." *Id.* The 1997 State Department report also states that "the guerrillas [have] renounced the use of force to achieve political goals. Although the level of crime and violence now seems to be higher than in the recent past, the underlying motivation in most asylum cases now appears to stem from common crime and/or personal vengeance." *Id.* at 4. "[T]he situation is unlikely to improve significantly in the short-term...." *Id.* Thus, the record shows that although violence stemming from persecution by guerillas has declined since Ventura left Guatemala, guerrillas continue to subject civilians to death threats.

In these circumstances, we cannot say the risk to Ventura of future persecution on account of an imputed political opinion has been so minimized as to rebut the presumption of such persecution. *See Cordon–Garcia v. INS,* 204 F.3d 985, 990 (9th Cir.2000) ("A well-founded fear may be based on no more than a ten percent chance of actual persecution.") (citing *Velarde v. INS,* 140 F.3d 1305, 1310 (9th Cir.1998)). Ventura's case is similar to *Borja v. INS,* 175 F.3d 732 (9th Cir.1999) (en banc), in which we determined that the petitioner's well-founded fear of future persecution by rebels was not rebutted by general evidence of lessened violence in the home country.

In *Borja,* a State Department report stated that the numbers and geographical presence of rebels were declining, the rebels "in most instances" were not interested in the political opinions of their victims, it was "*generally* ... possible to seek internal resettlement," there were "fewer" disappearances and politically related killings, and peace talks were "adjourned indefi-

**1158**

nitely" due to "dissension." *Id.* at 738. These factors were not sufficient to rebut the presumption of a well-founded fear of future persecution because "although the current tide of violence may be receding, based on this record it still exists." *Id; cf. Marcu v. INS,* 147 F.3d 1078, 1081–82 (9th Cir.1998) (upholding a BIA determination that the presumption was rebutted where (1) a State Department report stated that "current conditions have so altered as to remove any presumption that past mistreatment ... will lead to mistreatment in the future," and (2) a State Department letter analyzing the petitioner's claim refuted his contention that no real change had taken place and that he would be subjected to retribution if he returned).

We conclude Ventura is eligible for asylum. He is also entitled to withholding of deportation, because the evidence compels the conclusion that it is more likely than not that his life or freedom would be threatened on account of imputed political opinion if he were to return to Guatemala. *See INS v. Stevic,* 467 U.S. 407, 413, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Molina–Morales,* 237 F.3d at 1051; *Singh–Kaur v. INS,* 183 F.3d 1147, 1149 (9th Cir.1999); *see also De Valle v. INS,* 901 F.2d 787, 790 (9th Cir.1990) (a "clear probability" of future persecution means "more likely than not.")

PETITION FOR REVIEW GRANTED; APPLICATION FOR WITHHOLDING OF DEPORTATION GRANTED; APPLICATION FOR ASYLUM REMANDED for the exercise of the Attorney General's discretion.