Shanin CHOWDHURY; Daisy Chowdhury; Shanjana Chowdhury, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 01–71437.
INS Nos. A70–926–083, A70–926–084, A70–926–085.

United States Court of Appeals, Ninth Circuit.

Submitted July 12, 2002.*

Decided Jan. 24, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Before NOONAN, WARDLAW and BERZON, Circuit Judges.

### MEMORANDUM **

Shanin Chowdhury petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his application for asylum and withholding of deportation. Chowdhury's wife and minor daughter are derivative applicants whose petitions depend exclusively on the merits of Chowdhury's petition. We have jurisdiction under 8 U.S.C. § 1105a(a), *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997), and we grant the petition.

Chowdhury argues that substantial evidence does not support the BIA's independent adverse credibility finding that his testimony was inconsistent. We agree. The BIA found that Chowdhury failed to adequately explain: 1) internal inconsistencies in his testimony regarding the reasons why and time periods during which authorities searched for him; and 2) a seeming inconsistency in his brother's letter concerning when his theater was destroyed. The BIA erred as a matter of law in concluding that these seeming inconsistencies undermined Chowdhury's asylum claim.

Extensive uncontested evidence confirms Chowdhury's core story that he was persecuted by members of the Bangladesh National Party ("BNP"). First, an affidavit from the Vice Chairman of the Jatiyo Party states that Chowdhury was a "re-nown member of Jatiyo Party," and that "for his political belief," Chowdhury "has been tortured and persecuted by Bangladesh National Party." Second, newspaper articles verify Chowdhury's testimony that armed "miscreants" beat him on March 25, 1992, that "rice traficking" preceded the murder of Chowdhury's friend, Malek, in April, and that his theater was destroyed on May 1, 1992. Finally, a notarized affidavit from Malek's brother states that BNP members forced him to file a false murder charge against Chowdhury.

In light of this independent evidence, the inconsistencies in Chowdhury's testimony appear to be "[m]inor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum's credibility finding." *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir.2000). Moreover, much of the purported inconsistency results from taking quotations of the transcript out of context. The BIA complains, for example, that Chowdhury stated in one hearing that the police were looking for him because he was falsely accused of Malek's murder and in another hearing that the police were looking for him because he was "trying to stop" the "BNP people." In fact, there is no inconsistency between the transcripts of the two hearings on this point. The entire story about Malek, which the BIA cites from the first hearing, was a part of Chowdhury's attempts to "stop" the BNP's stealing of flood relief provisions. Moreover, Chowdhury *did* discuss the Malek episode in detail later in the second hearing. Chowdhury's story there is the same as at the first hearing. Finally, the murder of Malek and the accusation of Chowdhury are independently reported in a newspaper article included in the record.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

We have held that "[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id.* at 1068. None of the purported inconsistencies appears to be an effort to enhance Chowdhury's claim of persecution. Meanwhile, Chowdhury's core story, when read in context, is both internally consistent and consistent with the extrinsic evidence. Because we reject the BIA's adverse credibility determination, we conclude that substantial evidence does not support the BIA's denial of asylum. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

We remand to the BIA to reconsider whether, accepting Chowdhury's story as credible, he meets the statutory eligibility requirements for asylum, and, if so, whether he should be granted asylum. On the record before us, " 'we would be compelled to reverse the BIA's decision if the BIA [on remand] decided the matter against the applicant.' " *INS v. Ventura,* —— U.S. ——, ——, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002) (quoting *Ventura v. INS,* 264 F.3d 1150, 1157 (9th Cir.2001)). Nevertheless, we are mindful that asylum determinations are "matter[s] that statutes place primarily in agency hands," *id.,* and thus remand, allowing the BIA to " 'reopen the record for additional investigation or explanation,' " *id.* (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)).

GRANTED AND REMANDED.