Ladislao **SALGUERO–CASTRO,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 02–70674.

INS No. A72–669–178.

United States Court of Appeals,
Ninth Circuit.

Submitted March 12, 2003.*

Decided April 3, 2003.

---

\* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Before RYMER, KLEINFELD, and PAEZ, Circuit Judges.

## MEMORANDUM**

Ladislao Salguero–Castro is a native of Guatemala who entered the United States without inspection in 1991. He petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum and withholding of deportation. Because deportation proceedings were commenced before April 1, 1997, and the final order was issued after October 30, 1996, we have jurisdiction pursuant to former 8 U.S.C. § 1105a(a), as amended by the transitional rules for judicial review in § 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *See Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997). We deny the petition.

I

■ Salguero–Castro points to an incident in 1991 when he was shot at by a military airplane in the vicinity of a guerilla camp that he was riding by while running an errand on horseback, threats by soldiers in the Guatemalan military, and the death in 1995 of a friend he had met in Los Angeles who had returned to Guatemala. However, these incidents do not compel a reasonable factfinder to find past persecution. *INS v. Elias–Zacarias*, 502 U.S. 478, 481–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Salguero–Castro was never involved in any type of political organization. His family lives in Guatemala unharmed. He testified that his problems began because guerillas ambushed soldiers on his father's property in 1990. The property was overrun, and soldiers told his father that Salguero–Castro would be ar-

rested as a guerilla if the property were not cleared. Nothing happened to Salguero–Castro. Nor was he injured by the gunfire; a reasonable factfinder could conclude that Salguero–Castro was simply at the wrong place at the wrong time. *See Desir v. Ilchert*, 840 F.2d 723, 727 (9th Cir.1988) ("Persecution is found 'only when there is a difference between the persecutor's views or status and that of the victim; it is oppression which is inflicted on groups or individuals because of a difference that the persecutor will not tolerate.'" (quoting *Hernandez–Ortiz v. INS*, 777 F.2d 509, 516 (9th Cir.1985))). The only explicit threat occurred after that, when a military officer visited his house, accused him of being a guerilla, and told Salguero–Castro's mother that he would be killed if caught. *Cf., e.g., Gui v. INS*, 280 F.3d 1217, 1229 (9th Cir.2002) (finding past persecution when an applicant was first threatened and then survived, without injury, a staged car crash that could have resulted in severe injury); *Ruano v. Ashcroft*, 301 F.3d 1155, 1160–61 (9th Cir.2002) (finding past persecution when an applicant was first threatened and then "was hunted down (albeit unsuccessfully) by men with pistols who were out to harm him"). This threat, while menacing, was not combined with confrontation or other mistreatment. *Cf. Lim v. INS*, 224 F.3d 929, 936 (9th Cir.2000) ("Our court generally treats unfulfilled threats, without more, as within that category of conduct indicative of a danger of future persecution, rather than as past persecution itself."). Accordingly, we cannot say that a finding of persecution was compelled.

■ Likewise, the evidence does not compel the conclusion that Salguero–Castro has a well-founded fear of future persecution on account of his actual or imputed

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

political opinion. There is no question that Salguero–Castro has satisfied the subjective prong of the future persecution test in this case, as he testified credibly. However, the country condition report upon which the BIA relied provides substantial evidence in support of the conclusion that future persecution is not a reasonable possibility. Although Guatemalan country condition reports, standing alone, may have limited value when used to rebut a presumption of future persecution, *Rios v. Ashcroft*, 287 F.3d 895, 901–02 (9th Cir. 2002), these reports may provide substantial evidence in cases in which the burden remains on the applicant. *Molina–Estrada v. INS*, 293 F.3d 1089, 1096 (9th Cir. 2002). The IJ also relied on evidence that Salguero–Castro's family members have lived in Guatemala without incident, and that Salguero–Castro was never harmed by the Guatemalan military. Both facts constitute substantial evidence in support of the IJ's conclusion. *Aruta v. INS*, 80 F.3d 1389, 1395 (9th Cir.1996). Moreover, Salguero–Castro's claim that his family is not similarly situated is undermined by his father's interaction with the military following the ambush that took place on his father's land. Finally, Salguera–Castro's testimony only indicates that a friend was killed in 1995 and that he believes the government killed his friend because it thought his friend was a guerilla. However, Salguera–Castro has no direct knowledge of his friend's activities in Guatemala, or of what happened to him upon his return. A reasonable factfinder is not compelled to find either that the government was responsible, or that Salguera–Castro has a well-founded fear based on the fate that befell his friend from California.

## II

Having failed to satisfy the lower standard of proof to establish eligibility for asylum, Salguero–Castro necessarily cannot show eligibility for withholding of deportation. *Kazlauskas v. INS*, 46 F.3d 902, 907 (9th Cir.1995).

PETITION DENIED.

PAEZ, Circuit Judge, dissenting.

Because Salguero–Castro established past persecution by the military on account of an imputed political opinion, I would reverse and remand for additional findings on changed country conditions.

## I.

Neither the Immigration Judge (IJ) nor the Board of Immigration Appeals (BIA) made a negative credibility finding; therefore we must accept Salguero–Castro's testimony as true. *Lim v. INS*, 224 F.3d 929, 933 (9th Cir.2000). Salguero–Castro testified that after the guerillas ambushed soldiers on his father's land, an army officer approached Salguero–Castro and his father and demanded that they clear the brush in the area where the ambush occurred. After his father explained that Salguero–Castro would be responsible for the clearing, but that he would also need to help with the harvest, the army officer said that Salguero–Castro had to keep the area clear or he would take Salguero–Castro as a guerilla, "and you know very well what it is that we do to guerillas." Salguero–Castro testified that he knew this meant he would be killed "because it is known that every person that they take to be a guerilla they kill." Furthermore, after the officer's threat, Salguero–Castro and his father came upon a large hole filled with human remains in clothing that suggested they were the bodies of guerillas or civilians.

Salguero–Castro testified that the guerillas approached him several times and forced him to attend meetings to encourage him to join their forces. A couple of

days after a visit from the guerillas, Salguero–Castro was stopped at a check point by the guerillas and held for several hours. Again, Salguero–Castro refused to join them and proceeded to go into town to run an errand for his father. On his way home, he passed through the area where he had been held by the guerillas hours before and a military plane descended and started strafing his location.

A few days after the shooting incident, Salguero–Castro's mother told Salguero–Castro that an army officer came to the house looking for him, stating that "he [Salguero–Castro] was a guerilla and that he would kill him." Salguero–Castro then fled to the mountains and subsequently to the United States. He testified that he knows he is on an army list as a guerilla, and that if he returns he will be killed. Salguero–Castro also testified that his father had written him a letter telling him that the army had come back to the house looking for him.

"In asylum and withholding of deportation cases, we have consistently held that death threats alone can constitute persecution." *Ernesto Navas v. INS*, 217 F.3d 646, 658 (9th Cir.2000). Although it is true that "[o]ur court generally treats unfulfilled threats, without more, as within that category of conduct indicative of a danger of future persecution, rather than as past persecution itself," *Lim*, 224 F.3d at 936, here Salguero–Castro testified to threats "with more"—the threats were menacing and were combined with an (albeit unsuccessful) attempt by the military to shoot and kill Salguero–Castro.

As the majority notes, in *Gui v. INS*, we found past persecution when an applicant was first threatened and then survived a staged car crash. 280 F.3d 1217, 1229 (9th Cir.2002). The reasoning in *Gui* supports a finding of past persecution here: "The fact that [Salguero–Castro] did not in fact

die or suffer serious injury in [the shooting incident] should not mitigate the severity of the acts. Had he been maimed in the [shooting incident], persecution would be established easily." *Gui*, 280 F.3d at 1229. *See also Del Carmen Molina v. INS*, 170 F.3d 1247 (9th Cir.1999)(holding that where petitioner testified that some of her cousins had been killed because they served in the military and that she had received two threatening notes, she had demonstrated past persecution); *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997)(finding that petitioner demonstrated past persecution as a result of the threats of violence and death he received from a terrorist group, but denying asylum for failure to satisfy on account of prong).

### II.

Salguero–Castro also testified credibly that he suffered this persecution on account of an imputed political belief. *See Ernesto Navas*, 217 F.3d at 658. In both death threats, the army referred to him as a "guerilla." *See id.* at 659 (explaining that an applicant can establish imputed political opinion "where the persecutors' conduct or statements show that they are imputing a particular opinion to their victim."). Salguero–Castro testified to several interactions with the guerillas that would support the army's belief that he was a guerilla or a guerilla supporter.

### III.

The fact that Salguero–Castro's family is living unharmed in Guatemala, while relevant, is certainly not dispositive. "The fact that the [Salguero–Castro] family is safe does not refute his claims of persecution." *Ceballos–Castillo v. INS*, 904 F.2d 519, 521 (9th Cir.1990) (citation omitted). In *Lim*, we explained that ongoing family safety mitigates a well-founded fear when the family is similarly situated "and thus

presumably subject to similar risk." *Lim*, 224 F.3d at 935. Here, however, there is no evidence in the record that either of petitioner's parents or his brother were ever accused of being guerillas by the military, recruited by the guerillas, compelled to attend a guerilla meeting, shot at by a military plane, or threatened with death by a military official. Indeed, the brother, who would presumably be most likely to be similarly situated, was a member of the Guatemalan army. As in *Lim*, "nothing in the record supports an inference that their safety ensures that [petitioner] will be safe." *Lim*, 224 F.3d at 935.

### IV.

Showing past persecution is sufficient to create a presumption of a well-founded fear of persecution. *Singh v. INS*, 134 F.3d 962, 967 (9th Cir.1998). However, the INS may defeat this presumption by demonstrating that conditions have changed in the country where the persecution took place, and so persecution is no longer likely. *Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir.1995); INA § 208.13(b)(1)(i)(A). Because the Supreme Court in *INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), raised substantive objections to our interpretation of and reliance on the 1997 State Department's Country Conditions Report on Guatemala to show a lack of change in country conditions, I would remand to the BIA for additional evidentiary findings on country conditions. The Court described the 1997 State Department Report as "at most, ambiguous" about whether country conditions had sufficiently changed. *Ventura*, 123 S.Ct. at 356. The Court also described contradictory statements in the Report as to the current state of conditions between the guerillas and the government and concluded that "remand could lead to the presentation of further evidence of current circumstances in Gua-

temala—evidence that may well prove enlightening given the five years that have elapsed since the report was written." *Id.* (citing 8 C.F.R. §§ 3.1, 3.2). In sum, I would grant the petition for review and remand to the BIA.