Esteban Rafael VELASQUEZ,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–72716.
Agency No. A75–870–677.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Decided Nov. 19, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Garish Sarin, Esq., Los Angeles, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, Los Angeles District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, San Francisco, CA, Hillel Smith, Washington, DC, for Respondent.

Before PREGERSON, FERNANDEZ, and BERZON, Circuit Judges.

## MEMORANDUM *

Esteban Rafael Velasquez, a Guatemalan citizen and Mayan Indian, petitions this court for review of a Board of Immigration Appeals (BIA) decision denying his application for asylum and withholding of removal. The BIA affirmed without opinion the decision of the Immigration Judge (IJ), so we review the IJ's decision as the final agency determination. *See* 8 C.F.R. § 3.1(a)(7) (2003); *Fajardo v. INS,* 300 F.3d 1018, 1019 n. 1 (9th Cir.2002). As we conclude that the IJ erred in failing to consider whether acts of violence alleged by Mr. Velasquez were committed by actors the government was unwilling or unable to control, we grant the petition in part and remand for further proceedings. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

1. The agency's factual findings, including credibility determinations, are reviewed for substantial evidence. *See Melkonian v. Ashcroft,* 320 F.3d 1061, 1065 (9th Cir.2003); *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir.2002). Questions of law, however, are reviewed de novo. *See Melkonian,* 320 F.3d at 1065. We may grant the petition for review only if Mr. Velasquez's evidence is such that a reasonable fact-finder would have to find in his favor. *See Khourassany v. INS,* 208 F.3d 1096, 1100 (9th Cir.2000).

To establish eligibility for asylum, an asylum applicant must demonstrate "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *He v. Ashcroft,* 328 F.3d 593, 603–04 (9th Cir.2003) (quoting *Navas v. INS,* 217 F.3d 646, 655–56 (9th Cir.2000)). An applicant may demonstrate persecution by relying upon the cumulative effect of several incidents which would not rise to the level of persecution if consid-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ered individually. *See Navas*, 217 F.3d at 656 n. 9.

2. Mr. Velasquez testified that he suffered discriminatory beatings at the hands of the Ladinos. The IJ dismissed Velasquez's claims of discriminatory violence, concluding that discrimination by private individuals could not constitute persecution. In the IJ's words:

> [T]his is discrimination neither sanctioned by law nor by the government.... The Court certainly does not approve of these actions but this the Court believes in [and] of itself does not rise to the level of persecution[,][b]ut [represents] the action [of] some private individuals taking out upon another individual that they believe is different.

As we have recognized, however, "[n]ongovernmental groups need not file articles of incorporation before they can be capable of persecution," *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir.1998), and persecution may be perpetrated by groups the government is unwilling or unable to control. *See Borja v. INS*, 175 F.3d 732, 736 n. 1 (9th Cir.1999) (en banc); *Korablina*, 158 F.3d at 1044; *Singh v. INS*, 94 F.3d 1353, 1359 (9th Cir.1996).

Mr. Velasquez testified that because the police, who are members of the Ladino majority group, only protect the Ladinos, he did not report the incidents to the authorities. He also provided documentary evidence of the pervasive discrimination faced by indigenous people. *See* Comms. on Foreign Relations and Int'l Relations, 105th Cong., 2d Sess., Country Reports on Human Rights Practices for 1997, at 527 (Joint Comm. Print 1998) (noting that discrimination against indigenous people persisted in 1997) [hereinafter Country Reports on Human Rights Practices for 1997]; *id.* at 533 (discussing "pervasive discrimination" against indigenous people). Mr. Velasquez thus put forth evidence that

it would have been futile for him to report the beatings to the police because the police, members of the group that was discriminating against him, were unwilling to intervene. *Cf. Korablina*, 158 F.3d at 1042–43 (concluding that the alleged persecution was at the hands of a group the government was unable or unwilling to control, where applicant testified that she did not report the incidents to the police—who were part of the same anti-Semitic group as her oppressors—because doing so would be fruitless and potentially dangerous).

In addition, Mr. Velasquez presented evidence that pervasive exclusion of indigenous people from government services such as education meant that he was unable to communicate with the Spanish-speaking police, so a report would have been futile in that sense as well. *See* Transcript of Hearing, July 20, 1998, at 36–37 (Velasquez's testimony that his family did not complain to the police about exclusion from school because they could not speak Spanish); Country Reports on Human Rights Practices for 1997, at 535 ("Linguistic barriers [faced by indigenous people] hinder interaction with the Government and limit access to public services, including the judiciary, since few officials speak any of the 21 indigenous languages.").

Further, Velasquez introduced evidence that as a general matter, the police were unable to control the violence. *See* State Dep't, Guatemala—Profile of Asylum Claims and Country Conditions, June 1997, at 4 ("Weak or ineffective police, judiciary, and public prosecutors greatly limit the Government's ability to effectively prosecute accused criminals.") [hereinafter Country Conditions Report]; *id.* at 9 (noting that police "resources were spread so thinly that ... pursuit was reserved for the most important cases"); Country Re-

ports on Human Rights Practices for 1997, at 527 ("Lynchings and mob attacks continued, and the Government was unable to prosecute the perpetrators"); *id.* at 528 (reporting popular frustration with inability of government to control crime); *cf. Avetova–Elisseva v. INS*, 213 F.3d 1192, 1197–98 (9th Cir.2000) (noting that if the government is unable to control the elements of society committing the acts of persecution, "it does not matter that financial considerations may account for such an inability"). Although the IJ correctly observed that the government had begun to take steps toward combating abuse of indigenous peoples, other evidence in the record demonstrated that pervasive discrimination against these groups persisted despite these reforms. *See* Country Reports on Human Rights Practices for 1997, 527, 533.

Despite the evidence in the record suggesting that the Guatemalan government might have been unable or unwilling to control the violence committed against Mr. Velasquez, the IJ entirely failed to consider whether such violence might qualify as persecution on this basis. We therefore remand to allow the BIA (and, on remand, the IJ) to consider in the first instance whether the beatings by Ladinos constituted discrimination by private actors the government was unable or unwilling to control, and if so, whether these incidents taken in combination with the denial of an education, the threats on Mr. Velasquez's life, and the murders of his relatives may suffice to establish past persecution or a well-founded fear of future persecution. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (proper course is for the court of appeals to remand to give "the BIA the opportunity to address the matter in the first instance in light of its own expertise").

3. Because we remand on the narrow grounds described above, we do not decide the merits of the remaining issues raised in Mr. Velasquez's petition. We note, however, that in considering the impact of the military's threats against Mr. Velasquez's life and the murders of his relatives on his asylum claim, the IJ stressed that despite those threats and murders, Mr. Velasquez's mother and sister have remained in Guatemala unharmed. This consideration is pertinent only in limited circumstances. *See Rios v. Ashcroft*, 287 F.3d 895, 902 (9th Cir.2002) ("[A] petitioner's family's continued safety does not rebut the petitioner's well-founded fear of future persecution when there is no evidence that the family is 'similarly situated or subject to similar risk,'" and nothing in the record suggests that their safety ensures that the petitioner will be safe) (quoting *Lim v. INS*, 224 F.3d 929, 935 (9th Cir.2000)).

For the reasons stated, we GRANT IN PART the petition and REMAND the case for further consideration.