**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELLINAH KALUMU MUTUKU,
                            *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                            *Respondent.*

No. 05-73609

Agency No.
A075-586-093

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 1, 2010—Pasadena, California

Filed April 9, 2010

Before: Betty B. Fletcher, Harry Pregerson, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Land Wayland, Diamond Bar, California, for the petitioner.

Jessica Segall and Annette M. Wietecha, U.S. Department of Justice Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Ellinah Kalumu Mutuku ("Mutuku") petitions for review of the Board of Immigration Appeals's ("BIA") dismissal of her appeal of the immigration judge's ("IJ") denial of her claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We dismiss the petition for review with respect to Mutuku's asylum claim, deny the petition with respect to her CAT claim, and grant the remainder of her petition and remand to the BIA for further proceedings.

## I.   Background

Mutuku is a fifty-seven-year-old native and citizen of Kenya. In Kenya, she worked for Lutheran World Relief, a Christian non-governmental organization, and was an organizer and supporter of the Democratic Party, the leading opposition party in Kenya at the time. In August 1992, a band of armed men came looking for her at her house, burned down her home, beat her sister, and harassed her mother. The men told Mutuku's mother, who escaped the fire, that they would kill Mutuku if she did not stop her political activities. Mutuku submitted several photographs of her destroyed home to the IJ. After this incident, Mutuku received three phone calls threatening to "come for [her] head" if she did not cease her political activities. Finally, in October 1992, Mutuku was almost hit by a Kanu Party ("KANUP") activist driving a truck.

Mutuku fled Kenya and came to the United States in November 1992 on a B-2 visitor visa. The Immigration and Naturalization Service (now the Bureau of Immigrations and Customs Enforcement of the Department of Homeland Security) issued Mutuku a Notice to Appear on September 11, 1998, charging her as removable because she had overstayed

her visa. In response, Mutuku applied for asylum, withholding of removal, and relief under CAT, claiming that she had been persecuted on the basis of her political opinion in Kenya and would likely be persecuted or tortured if she were to return.

On February 18, 2004, the IJ denied Mutuku's claims for asylum, withholding of removal, and relief under CAT. The IJ held that Mutuku was ineligible for asylum for three separate and independently sufficient reasons: her application was barred by the one-year statute of limitations; she was not credible and thus her testimony did not establish past persecution; even if she had suffered past persecution, she did not have a well-founded fear of future persecution because conditions in Kenya were no longer hostile towards members of the Democratic Party. He further denied withholding of removal on the basis of the latter two reasons, credibility and changed country conditions. Finally, he held that Mutuku was not eligible for CAT relief because the Democratic Party was now in power in Kenya, and thus it was not likely that she would be subjected to torture if she were to return.

On May 25, 2005, the BIA affirmed the IJ's decision in a per curiam order. With respect to asylum, the BIA affirmed the IJ's decision only on the basis that Mutuku's application for asylum was not timely. With respect to withholding of removal and CAT relief, the BIA adopted and affirmed the IJ's decision in its entirety, citing to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). Thus, we review the BIA's decision regarding asylum and the IJ's decision regarding withholding of removal and CAT relief. *See Ahir v. Mukasey,* 527 F.3d 912, 916 (9th Cir. 2008); *Abebe v. Gonzales*, 432 F.3d 1037, 1039 (9th Cir. 2005) (en banc).

## II. Asylum

**[1]** The BIA correctly found that Mutuku's application for asylum was barred by the one-year statute of limitations.[1] 8

[1]Mutuku arrived in the United States in November 1992 and applied for asylum in May 1998. Although the IJ describes Mutuku's application as

U.S.C. § 1158(a)(2)(B). Mutuku's hope that conditions in Kenya would improve does not constitute an extraordinary circumstance excusing her delay in applying for asylum. *See* 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(5). We dismiss Mutuku's petition insofar as it relates to her asylum claim. Mutuku's application for withholding of removal and relief under CAT, however, is not time barred. *See El Himri v. Ashcroft*, 378 F.3d 932, 937 (9th Cir. 2004).

### III.   Withholding of Removal

#### a.   *Adverse Credibility Determination*

The IJ denied Mutuku's application for asylum and withholding of removal because he found that her testimony was not credible. With respect to asylum, the BIA disclaimed reliance on the IJ's adverse credibility finding, and chose to affirm solely on the basis that Mutuku's application was not timely. *See Ahir*, 527 F.3d at 916 (citing *Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 743 (9th Cir. 2008) *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009)); *Abebe*, 432 F.3d at 1040 (citing *Tchoukhrova v. Gonzales*, 404 F.3d 1181 (9th Cir. 2005), *vacated on other grounds*, 549 U.S. 801 (2006)). However, the BIA did adopt and affirm the IJ's adverse credibility determination insofar as it provided a basis for denying Mutuku's application for withholding of removal.

**[2]** The IJ found that Mutuku was not credible because, though Mutuku had testified that she had almost been run

---

being six years delayed, Mutuku actually applied only two months late. Title 8 U.S.C. § 1158(a)(2)(B) requires an applicant to demonstrate by clear and convincing evidence that his or her asylum application was filed within one year of the "date of the alien's last arrival in the United States or April 1, 1997, whichever is later." 8 C.F.R. § 1208.4(a)(2)(ii). Mutuku filed for asylum on or around May 30, 1998, only one year and almost two months after April 1, 1997, so her application was less than two months past the one-year deadline.

over by a truck driven by a KANUP supporter in 1992, she did not mention this significant event in her asylum application. Credibility determinations are reviewed under the substantial evidence standard. *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009); *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007). The IJ was clearly incorrect; Mutuku's asylum application states that she was "threatened in September of 1992 and [she] was almost run down by a vehicle owned by Kanu Party which is the ruling political party in Kenya." The IJ's adverse credibility finding was premised on a clearly erroneous factual finding, and we reverse.

### b.  Changed Country Conditions

The IJ also found that Mutuku was ineligible for withholding of removal because, even if her testimony established past persecution, conditions in Kenya had become less dangerous for members of the Democratic Party and she no longer had a well-founded fear of returning to her home country.

As a threshold matter, we have jurisdiction to review the IJ's finding. The government contends that Mutuku did not challenge that finding before the BIA and, consequently, failed to exhaust her administrative remedies under 8 U.S.C. § 1252(d)(1). The government's exhaustion argument fails. Mutuku argued the issue of changed county conditions before the IJ, who found against her on this point. The BIA adopted and affirmed the IJ's decision on withholding of removal, citing *Matter of Burbano*, 20 I. & N. Dec. at 874. Where an issue has been presented to the IJ, and the BIA affirms the IJ decision citing *Matter of Burbano*, the issue is deemed exhausted. *Arreguin-Moreno v. Mukasey*, 511 F.3d 1229, 1232 (9th Cir. 2008). We have jurisdiction.

**[3]** Past persecution gives rise to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.16(b)(1)(i); *Mousa v. Mukasey*, 530 F. 3d 1025, 1030 (9th Cir. 2008). The government may rebut this presumption

by proving by a preponderance of the evidence that there has been a fundamental change of circumstances in Kenya "such that the applicant's life or freedom would not be threatened." 8 C.F.R. § 1208.16(b)(1)(i)(A). If the IJ or BIA finds that this burden has been met by the government, it must provide an "individualized analysis of how changed conditions will affect the specific petitioner's situation." *Garrovillas v. INS*, 156 F.3d 1010, 1017 (9th Cir. 1998) (internal quotation marks omitted). "Information about general changes in the country is insufficient for the government to overcome the presumption." *Lopez v. Ashcroft*, 366 F.3d 799, 805 (9th Cir. 2004) (citing *Rios v. Ashcroft*, 287 F.3d 895, 901 (9th Cir. 2002)). We review factual findings regarding changed country conditions for substantial evidence. *Lopez*, 366 F.3d at 805.

**[4]** Substantial evidence does not support the IJ's finding that conditions in Kenya had improved for members of the Democratic Party to such an extent that Mutuku no longer has a well-founded fear of returning to Kenya. The IJ based his finding on the fact that Mwai Kibaki, leader of the Democratic Party, was elected President of Kenya in 2002. He replaced Daniel arap Moi, the leader of KANUP. The IJ relied heavily on the first sentence from the first paragraph of the State Department's 2002 Human Rights Country Report for Kenya ("2002 Country Report"), which states that "Kenya is a republic dominated by a strong presidency." This sentence is too thin a reed on which to deny Mutuku withholding of removal. The 2002 Report was released on March 31, 2003, but it covered the period from January 1, 2002, through December 31, 2002, so the Report covered only one day after Kibaki was sworn in as President and only four days after he had won the election. It did not provide substantial evidence that there was a fundamental change of circumstances in Kenya caused by Kibaki's election.

**[5]** The 2002 Country Report, when considered in its entirety, confirms that abuses like those suffered by Mutuku are still common in Kenya. If the IJ had continued to the sec-

ond page of the 2002 Country Report, he would have read that Kenya's human rights record remained poor. Abuses by security forces, particularly the police, are common. Political activists like Mutuku are routinely targeted by police for harassment, arbitrary arrest, excessive force, rape, abuse, and even extrajudicial killing. "The Kenyan Human Rights Commission . . . has documented more than a thousand cases of extrajudicial killings in the last decade." Furthermore, the 2002 Country Report also documents violent clashes between KANUP and opposition supporters at political rallies, and reports that political parties have "used gangs of young followers to harass other parties and to prevent them from holding meetings or events." The use of young followers in 2002 to harass opposition supporters echos the incident where a group of around eleven or twelve young men harassed Mutuku's family and burned down her home in 1992.

**[6]** Nothing in the 2002 Country Report indicated that conditions for political opponents of KANUP had improved, or that KANUP members were no longer able to persecute Democratic Party members. In offering only the 2002 Country Report, therefore, the government failed to meet its burden of proof to show, by a preponderance of the evidence, that circumstances had changed such that Mutuku no longer faced a threat to her life or freedom based on her political opinion. The IJ erred in making such a finding.

## IV.   Convention Against Torture

**[7]** The BIA adopted and affirmed the IJ's decision to deny Mutuku relief under CAT. To qualify for CAT relief, Mutuku must prove that it is more likely than not that she would be tortured by or with the acquiescence of agents of the Kenyan government if she were to return to Kenya. *See* 8 C.F.R. § 208.18(a)(1) (2000); *Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001). The IJ found that Mutuku had not satisfied her burden because the Kenyan government is now in the hands of a coalition of parties that includes Mutuku's own

Democratic Party. We review this finding for substantial evidence. *Kamalthas*, 251 F.3d at 1281. Because "[c]ountry conditions alone can play a decisive role in granting relief under [CAT]," we cannot say that the record compels a finding that Mutuku would likely be tortured if she were to return to Kenya. *Id* at 1280. Accordingly, we deny Mutuku's petition for review of the IJ's denial of CAT relief.

## V.   Remand to the BIA

**[8]** The IJ and the BIA did not decide whether Mutuku's testimony, if believed, established past persecution. We remand so that the BIA may decide this question in the first instance. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam). We do not remand on the questions of adverse credibility. Mutuku's testimony should be deemed credible. *See Soto-Olarte*, 555 F.3d at 1095. Nor do we remand on the question of changed country conditions. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1070 n.11 (9th Cir. 2004); *Hoxha v. Ashcroft*, 319 F.3d 1179, 1185 (9th Cir. 2003)*; Baballah v. Ashcroft*, 335 F.3d 981, 992 (9th Cir. 2003); *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1198 n.9 (9th Cir. 2000) ("Indeed, any remand in such circumstances would be extremely unfair to litigants, potentially triggering multiple determinations and repeated appeals as to whether there is any 'current' persecution — a sort of Zeno's Paradox in which the arrow could never reach the target.").

The government shall bear the costs for this petition for review.

**PETITION DISMISSED IN PART, DENIED IN PART, and GRANTED AND REMANDED IN PART.**