**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GUI HUA DONG,<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>Respondent. | No. 08-73489, 10-70006<br><br>Agency No. A096-191-828<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 3, 2013
Pasadena, California

Before: PREGERSON, BERZON, and CHRISTEN, Circuit Judges.

In these consolidated petitions for review, Gui Hua Dong, a native and

citizen of China, petitions for review of the orders of the Board of Immigration

Appeals ("BIA") denying her untimely motion to reopen (Petition No. 10-70006),

and dismissing her appeal from an Immigration Judge's ("IJ") decision denying her

application for asylum, withholding of removal, and protection under the

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Convention Against Torture ("CAT") (Petition No. 08-73489). We deny Dong's petition for review as to her untimely motion to reopen, and we grant Dong's petition for review as to the BIA's denial of asylum, withholding of removal, and CAT relief.

## I. Motion to Reopen Petition (No. 10-70006)

On appeal to this court, Dong neglected to challenge the BIA's determination that she failed to submit evidence of changed country conditions in China in her untimely motion to reopen. This issue is therefore waived and this petition for review is denied. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259-60 (9th Cir. 1996).

## II. Merits Petition (No. 08-73489)

Dong also petitions for review of the BIA's decision dismissing her appeal from the IJ's denial of asylum, withholding of removal, and CAT relief. "We review . . . adverse credibility finding[s] under the substantial evidence standard." *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002). We conclude that substantial evidence does not support the BIA's adverse credibility determination in this pre-REAL ID Act case.

**1.** The BIA's determination that Dong's Falun Gong claim was not credible is not supported by substantial evidence. First, although Dong did not mention in

her asylum declaration that she was beaten while in detention during her first arrest, "the mere omission of details is insufficient to uphold an adverse credibility finding." *Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000). Moreover, the BIA and IJ put themselves in Dong's shoes and determined what they thought someone in Dong's situation would include in her asylum application. That is prohibited. *Id.* ("[T]he IJ's subjective view of what a persecuted person would include in [her] asylum application has no place in an adverse credibility determination.").

Second, the IJ's remaining adverse credibility findings as to Dong's Falun Gong claim were not specifically relied on by the BIA. In any event, none were supported by substantial evidence. The IJ's finding that Dong did not mention the second arrest on direct examination when her counsel asked her if there was anything else that she wanted to add was based on a misstatement of the record; she was never asked about or given an opportunity to talk about the second arrest during her direct examination. *See Mutuku v. Holder*, 600 F.3d 1210, 1213 (9th Cir. 2010) (where an adverse credibility determination is based on a clearly erroneous factual finding, it will not be upheld).

That Dong at first testified that she was arrested on September 4, 1999 before she corrected herself, saying she made a mistake because she was nervous,

and then testified that she was arrested on September 8, 1999, and that she also misspoke about the date she started practicing with Shunzi Li at her home before correcting herself were trivial inconsistencies in dates, made a number of years after the events in question occurred. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) ("[M]inor inconsistencies regarding non-material and trivial details, such as . . . inconsistencies in specific dates and times that lack a close nexus to the petitioner's asserted grounds of persecution, cannot form the exclusive basis for an adverse credibility determination.").

That Dong testified that sixteen people were arrested at the same time she was arrested for the second time was not actually inconsistent with her written statement, which said "about 20" people, not exactly that number, as the IJ asserted; further, any possible discrepancy between sixteen and approximately twenty is minor.

That Dong testified at first that she was interrogated twice during her first arrest and then clarified that she was interrogated twice in the interrogation room and once in the detention room was a minor inconsistency. Further, that she said in her written statement that she was interrogated three times without making a distinction in locations is a mere omission of details, not an inconsistency. *See Garrovillas v. INS*, 156 F.3d 1010, 1014 (9th Cir. 1998) ("[I]nconsistencies of less

4

than substantial importance for which a plausible explanation is offered" cannot serve as the sole basis for a negative credibility finding); *Bandari*, 227 F.3d at 1167.

Any inconsistency regarding her passports did not go to the heart of her asylum claim.

**2.** The BIA's determination that Dong's forced abortion claim was not credible is also not supported by substantial evidence. The BIA gave four reasons for disbelieving Dong. The first was Dong's alleged inconsistent testimony regarding the date that Chinese family planning officials discovered Dong was pregnant. Yet, even if Dong's testimony was inconsistent in this respect, it is a minor inconsistency that does not support an adverse credibility finding. *See Vilorio-Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir. 1988) (a minor inconsistency that "reveal[s] nothing about an asylum applicant's fear for [her] safety [is] not an adequate basis for an adverse credibility finding").

Second, the BIA found it was "implausible" that officials would allow Dong to delay the abortion for three months after telling her "that an abortion was required right away." The record reveals, however, that Dong was told immediately, at the physical exam, that she would have to have the abortion, not that she was required to have the abortion immediately. Dong's subsequent

5

testimony confirms this reading of the record. Dong testified: "[T]hey told me to go [to] family planning classes for one month, and then told me to do the abortion." An erroneous factual finding based on a misreading of the record does not constitute substantial evidence to support an adverse credibility determination. *See Mutuku*, 600 F.3d at 1213.

Moreover, the BIA's determination that it was "implausible" and "unreasonable" for family planning officials to allow Dong's pregnancy to progress while they waited for her voluntarily to undergo an abortion, especially since she "would have been vulnerable to enforcement of a forcible abortion at any time," is at odds with the 2005 Country Report on China in the record. The country report affirms Dong's testimony that social and economic pressure to adhere to the one-child policy are common, and that women are visited by family planning officials and reminded of their potential liabilities should they continue an unauthorized pregnancy. *See* 2005 U.S. State Department Country Report on Human Rights Practices in China. The country report thus supports Dong's testimony that officials coerced and pressured her to have an abortion, but did not immediately subject her to a forced abortion. The BIA's determination, therefore, cannot be upheld because it is based on mere speculation and conjecture that family planning officials would not allow Dong to voluntarily undergo the

6

abortion.  *See Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000) ("We cannot uphold an adverse credibility finding that rests on conjecture and speculation.").

The third reason the BIA gave for finding Dong incredible was the alleged contradictory statement in her testimony that "she was 'hiding' at either her cousin's or father's home while she was also attending the family planning classes."  The record does not support this finding.  Dong did not testify that she was hiding at the same time as she was going to family planning classes.  Instead, she testified that (1) she went to family planning classes for a month; (2) she then went into hiding; (3) she was later found and taken back home where she resumed family planning classes for a week; and, finally, (4) the family planning committee director forcibly took her from her class to the hospital for the abortion.  An erroneous factual finding does not support an adverse credibility determination.  *See Mutuku*, 600 F.3d at 1213.

Finally, the BIA found unpersuasive Dong's statement that as long as she was not visibly pregnant, the family planning officials "were not insistent on seeing proof that her abortion had been completed."  The BIA misinterpreted Dong's testimony and failed to address Dong's reasonable explanation that she postponed the abortion by telling the officials she would get the abortion the following week.  Although the family planning officials knew Dong was pregnant,

7

she testified that they did not force her to terminate her pregnancy because she told them she would do it on her own. Again, this is supported by the country report. Thus, the BIA's speculation and conjecture about what it believes the family planning officials would have done does not support an adverse credibility finding. *See Shah*, 220 F.3d at 1071.

Because the BIA's findings are not supported by substantial evidence, Dong's testimony must be accepted as credible. *See Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir. 2004). Dong is therefore statutorily eligible for asylum based on her credible forced abortion claim. *See Ding v. Ashcroft*, 387 F.3d 1131, 1140 (9th Cir. 2004) ("[I]f an applicant is believed to have suffered forced abortion or sterilization, the applicant is *necessarily* eligible for asylum under the BIA's interpretation of the INA because such a person is automatically classified as a refugee under 8 U.S.C. § 1101(a)(42)(B)." (internal quotation marks omitted)). Accordingly, we grant the petition for review, and remand to the BIA, which shall, on behalf of the Attorney General, exercise discretion regarding whether to grant asylum based on Dong's forced abortion claim. *See id*. We remand for further proceedings as to whether Dong is eligible for withholding of removal and CAT relief based on either her Falun Gong or forced abortion claims. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (per curiam).

8

**CONCLUSION**

Dong's petition for review of the BIA's denial of her motion to reopen (No. 10-70006) is **DENIED.** Dong's petition for review of the BIA's dismissal of her appeal from the IJ's denial of her application for asylum, withholding of removal, and protection under CAT (No. 08-73489) is **GRANTED,** and **REMANDED.**

Each party shall bear its own costs on appeal.

FILED

APR 15 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Dong v. Holder*, Nos. 08-73489, 10-70006

**CHRISTEN**, Circuit Judge, dissenting:

I respectfully dissent because, in my view, the record on appeal does not compel a contrary conclusion regarding the BIA's adverse credibility determinations.