GETTLEMAN, District Judge,
dissenting:
I respectfully dissent from the majority opinion denying petitioner Jagtar Singh’s petition for review because, in my view, that denial is based on country reports that do not rebut the presumption of future persecution resulting from this court’s ruling in the prior appeal that petitioner suffered past persecution. Singh v. Keisler, 249 Fed.Appx. 602 (9th Cir.2007). The majority confirms the findings by the Immigration Judge (“IJ”) and the Board of *838 Immigration Appeals (“BIA”) that do not address petitioner’s precise claim and that erroneously require petitioner to meet an improper and near-impossible burden of proof, instead of placing the burden on the government, as required by law.[1]
On remand from this court’s prior order granting review of the petition for withholding of removal, the government attempted to rebut the presumption of future persecution with a 2008 U.S. State Department Issue paper, a 2007 State Department Country Report (together, the “U.S. Country Reports”), a 2007 United Kingdom Home Office operational guidance note (“the U.K. Report”), and two reports from the United States Citizenship and Immigration Services (“USCIS”). The IJ (as affirmed by the BIA) found that changed country circumstances constituted substantial evidence that petitioner’s “mere membership in the Akali Dal Mann Party provides no basis, in today’s India, for a finding that he will be persecuted.” I respectfully disagree with the majority’s approval of this conclusion because this petitioner does not claim persecution “merely” based on his past political activities (for which he was arrested and tortured), but rather that he has been and continues to be persecuted individually regardless of changed general circumstances.
The IJ erroneously focused on the portions of the tendered country reports that detailed then-current conditions for individuals affiliated with Sikh separatist political movements. These reports provided little information relevant to petitioner’s precise claim: that the police have specifically targeted him because of his past political activities and suspected support of militants, and that they continue to target him and his family. To the extent that the reports touched on country conditions for individuals previously persecuted and currently wanted by police, they support petitioner’s claim.
The UK Report includes a section on Sikhs that spans a few pages. The Report concludes that Sikhs no longer constitute a persecuted group; but, as noted above, petitioner’s claim is not that he will be persecuted simply because he is a Sikh or because of the general political situation. Petitioner’s claim is grounded in his previous interactions with Punjabi police (which this court has credited in his first appeal) and his fear of continued persecution (which this court has directed to presumed). The UK Report supports petitioner’s claim by noting that the human rights abuses at the time the report was written were different from the abuses of the 1980s because “now the abuse was individual and had specific reasons.” Consistent with that observation, petitioner offered evidence that shows that he has been individually targeted by the police, not that he is generally at risk because of his political affiliation.
The U.K. Report further states that it is unlikely that “individuals associated at a low or medium level with Sikh militant groups would be able to establish a well-founded fear of persecution.” The BIA quoted this language from the UK Report as strong evidence that country conditions had changed. That is not, however, the posture of this case; this court has already ruled that this petitioner has established a well-founded fear of individual persecution. Singh v. Keisler, 249 Fed.Appx. at 603.
Further, in an unpublished opinion in Singh v. Holder, 372 Fed.Appx. 821, 823 (9th Cir.2010), this court analyzed a UK Country Report similar to the report at *839 issue here.[2] That case held that country-reports that do not address a petitioner’s specific claim do not support an individualized determination of the petitioner’s claim. The petitioner in Singh v. Holder claimed that he would be subject to persecution in Punjab as a result of his political opinion and past persecution by police. Of critical significance to the instant case, the court noted that,
[t]he United Kingdom’s India Country Report states that the Sikh militant movement is ‘no longer active in the Punjab,’ a fact irrelevant to whether persons who were members in the now-dormant movement would face persecution were they to return. In fact, the Report indicates that they would face persecution, stating that persons like Singh, who have a ‘local history of abuse at the hands of the police,’ or are ‘militant[s],’ still face persecution. There is also no affirmative evidence in the State Department’s report on human rights practices in India to show that country conditions relevant to Singh have changed. [M]
Singh v. Holder thus succinctly states the flaws in the evidence presented by the government and is wholly inconsistent with the majority opinion in the instant case.[3]
As the majority notes, the 2007 and 2008 U.S. Country Reports barely mention the state of Punjab or Sikhs at all, with the exception of a discussion of the investigation into police misconduct in the mid-1990s. Under Lopez v. Ashcroft, 366 F.3d 799, 805 (9th Cir.2004), “[ijnformation about general changes in the country is insufficient for the government to overcome the presumption.” The IJ quotes the 2008 U.S. Country Report, noting that Sikhs have “ascended to the highest levels of the Indian Government,” and that the current Prime Minister is a Sikh. This type of general country information is, however, insufficient to rebut a presumption of future persecution, as this court has specifically held in the past. See Mutuku v. Holder, 600 F.3d 1210, 1214 (9th Cir.2010) (finding that a country report that simply asserted that the fact that Kenya’s president shared a political affiliation with the petitioner did not constitute substantial evidence of changed country conditions).[4]
Although the U.S. Country Reports do mention serious problems in other Indian states, they do not offer any support for the government’s argument that the country has changed such that petitioner no longer faces a threat to his life based on his past political affiliation and encounters with police. The omission of any statement about Punjab or Sikhs cannot be construed an affirmative statement that the country has changed for those individuals. In fact, the IJ criticized the country condition evidence produced by petitioner for its failure to specifically mention human rights abuses in Punjab. The IJ therefore cannot properly find at the same *840 time that the U.S. Reports are sufficient but petitioner’s reports are insufficient.
Neither USCIS report mentioned by the majority is discussed in the IJ or BIA opinions. The first USCIS position paper is titled “India: Information on Treatment of Members of the Akali Dal (Mann) Party in Punjab.” The first question presented is whether Punjab police arrest or otherwise mistreat Sikhs solely on account of membership in the Akali Dal (Mann) party, or for expressing support for the party. Again, this is not petitioner’s claim; he does not claim that the police would arrest him randomly because of his political affiliation. His claim is that they are already targeting him based on his past activity and will continue to do so if he returns. This is entirely separate from the first question addressed in the report.
The next material question addressed in the first USCIS report is whether Punjabi Sikhs are targeted solely for expressing support for the Khalistani cause. The report concludes that Sikhs are no longer targeted simply for holding pro-Khalistani views. It also notes, however, that “Punjabi Sikhs are likely targeted at times by local officials for holding pro-Khalistani views, but this is not done systematically.... any such targeting is probably the work of rogue officers at the local level.” This paper thus provides little support for the government’s position, and instead demonstrates that the police do in fact target individuals, as petitioner has alleged.
The second USCIS position paper is titled “India: Information Relocation of Sikhs from Punjab to Other Parts of India.” This paper addresses whether Punjab police pursue certain Sikhs who have relocated to other parts of India. The paper concludes that “[o]bservers generally agree that Punjab police will try to catch a wanted suspect no matter where he has relocated in India.” The position paper also notes that some observers report that police pursue only “high-profile” individuals. Although the paper focuses on militants and members of armed opposition groups, one prominent human rights lawyer stated that “[a] Sikh ... who [like petitioner] has been arrested one or more times on suspicion of being involved in political militancy, even a person suspected of such an involvement — whether or not the person has ever been actually arrested — is likely to be pursued wherever he or she goes.” Thus, the USCIS paper supports petitioner’s claim because, as this court found in his prior appeal, he was arrested and tortured on multiple occasions based on his suspected support of militants, and his testimony that police continue to visit his home is consistent with the practices detailed in the USCIS report.
Other than the second USCIS paper, the collective reports offer very little insight into the situation faced by Sikh individuals who, like petitioner, have suffered persecution in the past and continue to be subject to police harassment. This is a substantially different issue than whether “rank and file” members of Akali Dal Mann are persecuted at random. The only report that discusses individuals who have suffered past persecution is the ten-year-old USCIS report regarding the extent to which police pursue individuals who have already been arrested as a result of their affiliation with political and militant groups, and neither the IJ nor the BIA relied on this report. The ambiguous information contained in the reports is not sufficient to establish by a preponderance of the evidence, as 8 C.F.R. § 208.13(b)(l)(i)(A) requires, that conditions have changed to alleviate petitioner’s well-founded fear of persecution or to overcome the presumption of future perse *841 cution. When “evidence in the country report indicates that persecution similar to that experienced by the petitioner still exists,” the presumption of persecution is not rebutted. Boer-Sedano v. Gonzales, 418 F.3d 1082, 1089 (9th Cir.2005). In fact, the information provided in the USCIS papers demonstrates that persecution likely still exists.
Moreover, the IJ erroneously failed to give any weight to petitioner’s testimony or the affidavits from his family members because the declarants had not been questioned about the accuracy of their statements. Requiring cross-examination on these types of supporting affidavits is imposing a substantially excessive burden on an applicant. When the burden rests with the government to rebut the presumption of future persecution, it is incongruous that the petitioner should have to not only offer witnesses and evidence, but then secure their availability for cross-examination. The IJ appears to have drawn every inference against petitioner, instead of appropriately placing the burden with the government.
Finally, the IJ and the majority fault the evidence petitioner presented as unreliable and containing hearsay statements. Petitioner produced sworn affidavits from family members and a local politician regarding their first-hand observations of police conduct and conversations with Indian law enforcement. Because of the IJ’s doubts regarding the validity and accuracy of the claims, he accorded petitioner’s evidence very little weight. Yet the country and USCIS reports submitted by the government, although official documents, are rife with hearsay-within-hearsay. These papers cite the opinions and speculations of a handful of “India experts,” unnamed human rights lawyers, an “expert on religious militancy,” and one U.S.-based political scientist. Although the IJ found those statements more “objective” than petitioner’s family’s sworn statements, they are hardly the kind of detailed and individualized inquiries required to address the record presented in the instant case. See Singh v. Holder, 372 Fed.Appx. at 824.
Because I find: (a) that substantial evidence does not support the IJ and BIA’s conclusion that the government has adequately demonstrated changed country circumstances; (b) that the IJ and BIA incorrectly shifted the burden of proof to petitioner rather than the government; and (e) that the IJ and BIA failed to conduct the individualized analysis required by law, I would grant the petition for review, direct the BIA to grant petitioner’s application for withholding of removal, and remand for consideration of a discretionary grant of asylum.

. 8 C.F.R. §§ 1208.16(b)(l)(ii).

. The UK Report submitted in the instant case draws heavily on the Country Report described in Singh v. Holder, and in fact uses the same language quoted in the Singh v. Holder opinion. Both reports rely heavily on a March/April 2000 fact-finding mission to Punjab by the Danish Immigration Service in drawing their conclusions about the then-current situation of Sikhs in Punjab.

. Although the majority criticizes this citation to an unpublished opinion, my reference to Singh v. Holder is not as binding precedent, but as a case that is relevant and instructive to the instant case. Circuit Rule 36-3 clearly allows for the citation of unpublished decisions in accordance with Federal Rule of Appellate Procedure 32.1.

.I also note that this is no more informative of country conditions than a claim that racism does not exist in the United States because Barack Obama is president.