**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMUEL SENTOSA, | No. 19-73171 |
| Petitioner, | Agency No. A079-529-464 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the

Board of Immigration Appeals

Argued and Submitted May 4, 2021

Seattle, Washington

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

Before: BOGGS,** BERZON, and MURGUIA, Circuit Judges.

Samuel Sentosa is a citizen of Indonesia by nativity, Chinese by ethnicity, and a Christian by faith. During Indonesia's widespread discrimination and violence against ethnic Chinese and Christians in the 1990s—including his own experiences of being attacked, threatened, and robbed—Sentosa fled for American shores in 1999. He overstayed his visa and has been both granted and denied asylum and withholding of removal more than once. The agency's last determination was to deport him. He seeks to stay on American soil with his American wife. On appeal, he raises only his withholding-of-removal claim. We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). We do not revisit the facts except to provide necessary context. We **DENY** in part and **GRANT** in part the petition for review. We **REMAND** for full consideration of Sentosa's disfavored-group claim in a manner consistent with this order.

1. An applicant seeking withholding of removal must show that his life or freedom would be threatened on account of one of the grounds enumerated in 8 U.S.C. § 1231(b)(3). *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001). An applicant may establish eligibility for withholding of removal based upon either past

---

** The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

2

persecution or a clear probability of future persecution. *Hanna v. Keisler*, 506 F.3d 933, 939–40 (9th Cir. 2007). Past persecution creates a rebuttable presumption of eligibility for withholding of removal. *See, e.g.*, *Mutuku v. Holder*, 600 F.3d 1210, 1213 (9th Cir. 2010); *Tamang v. Holder*, 598 F.3d 1083, 1091 (9th Cir. 2010). As an alternative, an applicant can establish a clear probability of future persecution by showing a "pattern or practice" of persecution against a group to which he belongs, 8 C.F.R. § 208.16(b)(2)(i)–(ii), or by showing that he will be singled out individually for future persecution, *id.* § 208.16(b)(2).

2. Under a de novo standard of review, we might conclude that Sentosa has suffered past persecution. But the deference we owe to the agency under the substantial-evidence standard requires we uphold its determination that the mistreatment Sentosa endured—the beating that targeted Christians on a bus, the threat at knifepoint to make him stop attending his university Christian group, and the mob robbery that targeted his Chinese ethnicity—did not amount to past persecution. Although this court has found past persecution under similar mistreatment, *see, e.g.*, *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119–21 (9th Cir. 2004), it has also declined to find past persecution under arguably harsher mistreatment, *see, e.g.*, *Gu v. Gonzales*, 454 F.3d 1014, 1019–21 (9th Cir. 2006); *see also Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003); *Prasad v. INS*, 47 F.3d 336, 339–40 (9th Cir. 1995). Therefore, "[a]lthough a reasonable factfinder *could* have found

3

th[ese] incident[s] sufficient to establish past persecution, we do not believe that a factfinder would be *compelled* to do so. We are not permitted to substitute our view of the matter for that of the [BIA]." *Prasad*, 47 F.3d at 340 (second emphasis added).

3. Nor does the evidence compel this court to find that there is a pattern or practice of persecution against Chinese people or Christians in Indonesia. Circuit precedent, *Wakkary v. Holder*, 558 F.3d 1049, 1061 (9th Cir. 2009), and the substantial-evidence standard prevent us from reversing the agency's determination here. Sentosa describes widespread discrimination against Christians and Chinese people in Indonesia that is consistent with the discrimination described in *Wakkary* and other cases that this court has found fell short of a pattern or practice of persecution. Without evidence of worse discrimination now, we again cannot reverse the agency's determination.

4. The BIA failed to conduct a proper disfavored-group analysis to determine if Sentosa is more likely than not to be persecuted in Indonesia. Disfavored-group claims are based on an individualized risk of future persecution and are distinct from claims based on past persecution or a pattern or practice of persecution. *See, e.g.*, *Wakkary*, 558 F.3d at 1060, 1062–63. In disfavored-group claims, an applicant must both (1) belong to a disfavored group and (2) face an individualized threat or have endured past harm. *Id.* at 1065.

Disfavored groups are those that face widespread discrimination that falls short of a pattern or practice of persecution. *See id*. at 1066; *Tampubolon v. Holder*, 610 F.3d 1056, 1060 (9th Cir. 2010). Similarly, the individual past harms at issue in such a claim fall short of past persecution, and individual threats involved do not, on their own, show a "more likely than not" risk for future persecution. *Wakkary*, 558 F.3d at 1063–64. But an applicant can receive relief so long as, when both elements are considered together, he faces an aggregate more-likely-than-not risk of future persecution. *See Id.* at 1065–66. The logic of the disfavored-group doctrine is that an applicant's individualized risk cannot be accurately assessed in a vacuum, limited only to what he or she has personally suffered. "[W]hen asking how likely it is that an individual applicant will be 'singled out' in the future on the basis of his group membership, it is indisputably relevant (though of course not dispositive) how others in his group are treated." *Id*. at 1064.

Sentosa seeks withholding of removal as a member of two disfavored groups: Indonesian Christians, *Tampubolon*, 610 F.3d at 1062, and ethnic Chinese in Indonesia, *Sael v. Ashcroft*, 386 F.3d 922, 927 (9th Cir. 2004).

5. The agency failed to carefully consider the widespread discrimination against Christians and ethnic Chinese in Indonesia as well as Sentosa's past harm when it analyzed Sentosa's disfavored-group claim. Its analysis was therefore incomplete and requires remand for proper consideration. The agency's last

5

reasoned decision on the issue was in December 2009. Yet in *Sentosa v. Holder*, 552 F. App'x 707 (9th Cir. 2014), just over four years later, this court remanded the agency's 2009 denial of Sentosa's withholding claim because the agency's denial "did not discuss" the "substantial documentary evidence [Sentosa submitted] pertaining to country conditions in Indonesia," *id*. at 708. The prior panel reasoned that "'[T]he BIA has a duty to review the record,' and when important aspects of the claim are disregarded, 'denial of relief is arbitrary' and 'we must remand such cases for proper consideration.'" *Ibid*. (quoting *Tukhowinich v. INS,* 64 F.3d 460, 463–64 (9th Cir. 1995)).

However, on remand the agency did not address Sentosa's documentary evidence of group discrimination and its relevance to his disfavored-group claim. Instead, the immigration judge "incorporate[d] [the BIA's 2009 decision] by reference," and the BIA in 2019 then declined to "revisit" the issue. The agency's failure to engage in a new disfavored-group analysis on remand may be attributable to the prior panel's statement that it was granting Sentosa's petition "as to [his] claim for withholding of removal based on a pattern or practice of persecution." *Sentosa*, 552 F. App'x at 708. The agency, however, did not write that only the pattern-or-practice claim was remanded and continued to analyze Sentosa's disfavored-group claim in subsequent proceedings, albeit

6

in a cursory way. Further, the government conceded at oral argument that Sentosa's disfavored-group claim was remanded back to the agency, *see* Oral Arg. 16:28–16:37, presumably as part of the decision to remand Sentosa's "application for withholding of removal." *Id.* Therefore, the agency was required to analyze both Sentosa's "pattern or practice" *and* disfavored-group arguments for withholding of removal. The agency failed to analyze the latter when it merely adopted its earlier incorrect and conclusory analysis from 2009, which the prior panel had reversed in 2014.

6. Proper disfavored-group analysis is fact intensive. The agency must carefully consider the country-conditions evidence of discrimination against the disfavored group and then weigh it in conjunction with the applicant's individual risk of harm. "The relationship between these two factors is correlational; that is to say, the more serious and widespread the threat of persecution to the group, the less individualized the threat of persecution needs to be." *Mgoian v. INS*, 184 F.3d 1029, 1035 n.4 (9th Cir. 1999); *see also Sael*, 386 F.3d at 927. Here, Sentosa was harmed or threatened two times because he is a Christian, and one time because he is ethnically Chinese. Sentosa is at greater risk of persecution by belonging to two disfavored groups than if he only belonged to one because he can be persecuted on more than one independent ground. Further, Sentosa's past harms, although not sufficient to compel this court to find past persecution, are indicative of

individualized risk of future harm. *See, e.g.*, *Sael*, 386 F.3d at 929; *Hoxha*, 319 F.3d at 1184; *Wakkary*, 558 F.3d at 1063.

Because the disfavored-group doctrine is the cause of some confusion, we compare *Sael v. Ashcroft* with Sentosa's case to clarify the difference in individualized risk needed to grant relief for asylum and withholding claims based on disfavored-group status. First, Sentosa benefits from precedent that now recognizes both Indonesian Christians and ethnic Chinese as disfavored groups in Indonesia. Second, unlike Sael, *Sael*, 386 F.3d at 927–29, Sentosa suffered discrimination on both grounds.

Finally, Sentosa's past harms were also worse than what Sael suffered. For instance, the boarding house where Sael lived was pelted with stones while she remained inside, and her car was broken into and vandalized. *Id*. at 927. But she was never physically harmed. Sentosa was harmed and his life was twice threatened face-to-face. Both during the bus attack and after the Christian group meeting, he was threatened with weapons—a knife and large sticks. *See, e.g.*, *Ruano v. Ashcroft*, 301 F. 3d 1155, 1160–61 (9th Cir. 2002) (describing similar threats and attacks); *Navas v. INS*, 217 F.3d 646, 658 (9th Cir. 2000) (same). A knife is a deadly weapon. *See, e.g.*, *Rios v. Ashcroft,* 287 F.3d 895, 898 (9th Cir. 2002). Although Sael and Sentosa's threats from the mobs they encountered were similar, unlike Sael, Sentosa was robbed by the mob. Sentosa has "adduce[d] a considerably larger quantum of

8

individualized risk" than would be required for an asylum applicant like Sael. *Wakkary*, 558 F.3d at 1066.

We therefore **DENY** in part and **GRANT** in part the petition for review. We **REMAND** for full consideration of Sentosa's disfavored-group claim in accordance with this order.